IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN LEISKE, JOSEPH CHRISTOPHER LEWIS, and MARGARET SLEMMER, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT GREGORY KIDD, PACIFIC PREMIER TRUST CUSTODIAN FBO ROBERT G. KIDD IRA, and PACIFIC PREMIER TRUST CUSTODIAN FBO ROBERT G. KIDD ROTH IRA, <br><br> Defendants. | Civil Action No. 25-599-RGA |

MEMORANDUM CONCERNING MOTION TO REMAND

Defendants removed this case—an advancement action—from the Court of Chancery. (D.I. 2). Removal was based on diversity of citizenship. (*Id.* at 1). Plaintiffs filed a timely motion to remand. (D.I. 11).[1] Plaintiffs do not contest that there is diversity of citizenship. Instead, Plaintiffs' motion is based on a forum selection clause in an indemnification contract each of them signed. (D.I. 12 at 1).

Plaintiffs argue that the parties agreed that the Court of Chancery has exclusive jurisdiction over the suit based on the below forum selection clause, which appears in each contract.

---

[1] The parties have since filed three other motions in this case. In addition, there is a related case pending in the District of Nevada, captioned *Hard Yaka LLC v. Hard Yaka Ventures GP, LLC*, No. 2:25-cv-387-CDS-DJA, which was removed from Nevada state court. Plaintiffs in the instant case have intervened in the Nevada case as Defendants. There is also a JAMS arbitration and a books and records demand in the Court of Chancery. The books and records case is stayed. (*Hard Yaka*, No. 2:25-cv-387-CDS-DJA, D.I. 94 (D. Nev. Sept. 10, 2025)).

> 20. <u>Governing Law and Consent to Jurisdiction</u>. This Agreement and the legal relations among the parties shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without regard to its conflict of laws rules. The Indemnitors and Indemnitee hereby irrevocably and unconditionally (i) agree that any action or proceeding arising out of or in connection with this Agreement shall be brought only in the Chancery Court of the State of Delaware (the "Delaware Court"), and not in any other state or federal court in the United States of America or any court in any other country, (ii) consent to submit to the exclusive jurisdiction of the Delaware Court for purposes of any action or proceeding arising out of or in connection with this Agreement, (iii) waive any objection to the laying of venue of any such action or proceeding in the Delaware Court, and (iv) waive, and agree not to plead or to make, any claim that any such action or proceeding brought in the Delaware Court has been brought in an improper or inconvenient forum.

(D.I. 6, Exh. 1 at 12 (Plaintiff Leiske); Exh. 2 at 12 (Plaintiff Slemmer); Exh. 3 at 12 (Plaintiff Lewis)).

Defendants do not raise (or even hint at) any argument that the forum selection clause allows for this suit anywhere other than the Court of Chancery. (*See generally* D.I. 23). Instead, their main argument is that Plaintiffs defrauded Defendants into signing the contract.

A contractual forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).

There is nothing unreasonable about requiring Defendants to litigate issues relating to the indemnification agreement in the Court of Chancery.

First, Defendant Kidd is able to litigate in Delaware. The subject of all this litigation is a venture capital fund that has half a billion dollars of Kidd's money in it. Kidd lives in Nevada. Some of Kidd's companies, including one of the Plaintiffs in the Nevada case, are formed under Delaware law. (D.I. 30-6 (Hard Yaka Ventures GP LLC); D.I. 30-7 (Hard Yaka Ventures LP); D.I. 30-8 (Hard Yaka LLC)). Delaware may be a "faraway jurisdiction" (D.I. 23 at 12), but if

Kidd needs to come to Delaware for a hearing, he can easily do that.[2] I note that all three Plaintiffs are domiciled in California. (D.I. 2 at 3).

Second, based on my experience with a caseload that seems frequently to involve forum selection clauses, it is commonplace for contracts to provide for dispute resolution in Delaware even when the parties have little or no contact with Delaware. I note that, indeed, the forum selection clause in the agreements is essentially the same as the forum selection clause in a model venture capital indemnification agreement, which reads:

> 20. Governing Law and Consent to Jurisdiction. This Agreement and the legal relations among the parties shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without regard to its conflict of laws rules. The Company and Indemnitee hereby irrevocably and unconditionally (i) agree that any action or proceeding arising out of or in connection with this Agreement shall be brought only in the Chancery Court of the State of Delaware (the "Delaware Court"), and not in any other state or federal court in the United States of America or any court in any other country, (ii) consent to submit to the exclusive jurisdiction of the Delaware Court for purposes of any action or proceeding arising out of or in connection with this Agreement, [(iii) appoint, to the extent such party is not otherwise subject to service of process in the State of Delaware, irrevocably [name] [address] as its agent in the State of Delaware as such party's agent for acceptance of legal process in connection with any such action or proceeding against such party with the same legal force and validity as if served upon such party personally within the State of Delaware,] [NOTE: as the Delaware-incorporated Company is already subject to service of process in Delaware, this really only applies to the individual director.] (iv) waive any objection to the laying of venue of any such action or proceeding in the Delaware Court, and (v) waive, and agree not to plead or to make, any claim that any such action or proceeding brought in the Delaware Court has been brought in an improper or inconvenient forum.

(D.I. 30-5 at 25). (National Venture Capital Association "model indemnification agreement").

---

[2] Kidd says he would not have agreed to the forum selection clause if it had been adequately explained to him. (D.I. 24 at 2-3). Considering the three companies he formed under Delaware law, one of which was formed in 2010 (D.I. 30-8), his assertion that he would not have agreed to a forum selection clause selecting the Court of Chancery is not very credible.

Defendants argue that it would be unreasonable to litigate the advancement action while some of the same issues are decided in Nevada.[3] Defendants argue that the indemnification agreements were procured by fraud, which makes the indemnification agreement invalid. I do not think it is unreasonable to permit the Court of Chancery, which has a lot of experience with advancement actions, to decide how to handle the advancement action in light of Defendants' challenge to the validity of the agreement.

Defendants argue that the forum selection clause is a product of fraud and overreaching. (D.I. 23 at 14). Defendants argue that Defendant Kidd was a client of Plaintiff Leiske, a lawyer, and that Leiske owed Kidd a duty to tell him that he was agreeing to litigate anything connected to the indemnification agreement in Delaware, a "faraway jurisdiction." (D.I. 23 at 12). Kidd is not a lawyer, but he is a college graduate with two master's degrees, one in Business Administration and the other in Public Administration; he has been running a venture capital firm for fifteen years. (*Hard Yaka*, No. 2:25-cv-387-CDS-DJA, D.I. 67 at 1 (D. Nev. May 6, 2025)).

In making the fraud argument, Defendants run into a number of hurdles.

First, I am unconvinced that Leiske was Kidd's "own attorney." (D.I. 23 at 1). Leiske worked "in-house as the General Counsel of Hard Yaka Ventures." (D.I. 30-2 at 2). He and the other two Plaintiffs (both non-lawyers) were three of the six managers of Hard Yaka Ventures GP, LLC. Leiske may have assisted Kidd on some legal transactions unrelated to Kidd's

---

[3] Defendants make a related argument that remanding the case would promote judicial inefficiency by allowing the Court of Chancery to go forward with the litigation. (D.I. 23 at 17). Judicial inefficiency would violate Delaware's public policy. (*Id.*). The Court of Chancery is much better positioned than I am to decide what is or is not consistent with Delaware's public policy.

companies on four different days from November 2022 to January 2025 (D.I. 24 at ¶ 3),[4] but that is quite different from an agreement between Leiske and Kidd where Kidd is agreeing to indemnify Leiske and two other managers of Hard Yaka Ventures GP, LLC, which is a Delaware LLC.[5]

Second, the allegations of fraud ring hollow. This is how Kidd describes the interactions concerning the indemnity agreement.

> On or about February 27, 2024, I received indemnification agreements for Ms. Slemmer, Mr. Lewis, and Mr. Leiske. I also received an email on February 27, 2024 from Ms. Slemmer's assistant describing those agreements and copying Ms.

---

[4] Kidd describes the four occasions as,
> Furthermore, starting in late 2021 and continuing to January 20, 2025, Mr. Leiske provided me with personal legal advice. For example, on or around November 28, 2022, Mr. Leiske assisted me with negotiating a personal real estate contract in Singapore. On or around May 15, 2023, Mr. Leiske provided me with legal advice related to an outstanding personal loan for which I was the guarantor, unrelated to the Hard Yaka ecosystem. On or around August 12, 2024, Mr. Leiske helped me to set up a Parent Plus Loan for a college student as part of my personal charitable work. On or around January 20, 2025, Mr. Leiske assisted me in my personal capacity with purchasing a home in Maryland.

(D.I. 24 at 2). In the Nevada litigation, Kidd describes the legal work as "drafting promissory notes on August 4, 2022, April 19, 2024 and August 19, 2024, for Kidd individually, as well as offering legal advice on January 24, 2025 regarding the tax implications in the purchase of property that was 'just buy for me [Kidd].'" (*Hard Yaka*, No. 2:25-cv-387-CDS-DJA, D.I. 66 at 3 (D. Nev. May 6, 2025)).

[5] Leiske was a partner at Shartsis Friese until April 2022. (D.I. 30-2, Exh. 2 at 2). Leiske states that he asked "outside counsel" Shartsis Friese to draft the indemnity agreements because it was outside his area of expertise (*id.* at 3), which was tax law. The use of "outside counsel" suggests to me that Shartsis Friese was asked to produce the indemnity agreements in its role as "outside counsel" to Hard Yaka. The March 29, 2023 email transmitting the draft indemnity agreement from a Shartsis Friese attorney to Leiske stated: "Hi Kevin -- Attached is a form indemnification agreement that you, Chris and Margaret can execute with Greg and any of the other entities/persons that you need to get indemnification from. This form is based on the NVCA form indemnification agreement, but I've modified it to contemplate multiple indemnitors providing indemnification (so you don't have to sign a separate agreement with each entity)." (*Id.* at Exh. 1 to Exh. 2). The draft email had the same forum selection clause as the final indemnity agreements. The email is unclear who Shartsis Friese thought its client was when the firm was preparing the draft indemnity agreement, but from the reference to all the principals by first names, the email suggests the client was a Hard Yaka entity, not anyone individually.

> Slemmer, Mr. Lewis, and Mr. Leiske. Plaintiffs did not inform me that these indemnification agreements stripped out standard protections for me as the Indemnitor and increased the rights purportedly granted to them as Indemnitees. Plaintiffs also did not provide me with any disclosure, explanation or information regarding the forum selection provision. They did not inform me that this provision purportedly gave them the right to force me into court in Delaware, which they believed to be a favorable forum for themselves, not me. I do not reside in Delaware and I cannot recall ever having traveled to Delaware or spent time in Delaware. Nor did Plaintiffs inform me that they could use the forum selection clause to force me to litigate thousands of miles from my residence in a lawsuit through which they would demand that I pay advancement of their fees for litigation between us. If Plaintiffs had disclosed or accurately described the agreements' forum selection clause, I would not have executed the agreements. I relied on Plaintiffs, particularly Mr. Leiske as my attorney, to act as my fiduciaries, to disclose and explain this information, and to protect my interests.

(D.I. 24 at 2-3). Kidd does not exactly say whether he did or did not read the indemnity agreements before he signed them. If he did read them, they are not long (twelve pages each) and the forum selection clause is clearly set forth. If he did not read them, that is not a defense to Defendant Kidd being bound by the clause.

> Most of the time, Delaware law will hold a party to the terms of the agreement she executed even if she never read the agreement. There are many reasons for this approach, but the overarching concern is that if a party to a contract could use her failure to read a contract as a way to circumvent her obligations, "contracts would not be worth the paper on which they are written."

*UBEO Holdings, LLC v. Drakulic*, 2021 WL 1716966, at *10 (Del. Ch. Apr. 30, 2021) (footnotes omitted).[6]

The parties agree that the relevant issue for the fraud/overreaching analysis is not the agreement as a whole. Rather, for purposes of enforcing the forum selection clause, it is limited to fraud/overreaching in connection with that clause. (D.I. 23 at 11 (citing a case); D.I. 29 at 2

---

[6] I note that Defendants heavily rely upon *Drakulic*. (D.I. 23 at 1, 14-16). *Drakulic* is so factually dissimilar from the facts here that it has no persuasive value as applied to this case. It is amazing to me that Defendants can argue with a straight face that the indemnity agreements were like "contracts of adhesion" and that enforcing them would be "unconscionable." (*See id.* at 14-16).

Page 6 of 7

(citing multiple cases)). The record is devoid of any evidence that any of Plaintiffs discussed the forum selection clauses with Kidd, or that Kidd discussed them with anyone else. There is no substantial evidence of fraud in connection with the forum selection clause.

Defendants have one last argument. (D.I. 23 at 18). They say that remand to the Court of Chancery is futile, because the Court of Chancery does not have jurisdiction over the lawsuit. I suppose if Defendants really believed in that argument, they could have resolved this litigation a lot quicker by simply pursuing that argument in the Court of Chancery. Defendants have not convinced me that the Court of Chancery does not have jurisdiction. In any event, I think the Court that should decide the extent of the Court of Chancery's jurisdiction should be the Court of Chancery, not me.

I do not think it is unreasonable to enforce the forum selection clause. The case will be remanded to the Court of Chancery.

*Richard G. Andrews*
United States District Judge